## CHARLESTON.

### NORFOLK & W. R. Co. *v.* McGARRY *et al.*

Submitted September 5, 1896—Decided Nov. 21, 1896.

SPECIFIC PERFORMANCE—DISCOVERY—AFFIRMATIVE RELIEF—
SPECIAL REPLICATION.

The plaintiff railway company files a bill for the specific performance of a verbal agreement made by defendants' ancestor to sell and convey in fee a certain strip of land for a railroad track, and alleges that the purchase money was paid, possession was taken, the track was made, and is now used, praying for a conveyance. One defendant answers, admitting the sale, the payment of the purchase money, the taking of possession, and the present occupancy thereof by plaintiff, and defendant claims no right therein except an undergrade private crossing, and defendant alleges in his answer, by way of cross-bill, that defendants' ancestor had executed to the S. V. R'y Co., plaintiff's vendor, a deed of conveyance to said land, and delivered the same to B., the vice president of said S. V. R'y Co., and a director in the plaintiff company, but that his ancestor had excepted from said conveyance, and had expressly reserved therein, to himself forever, said right of way, and that said B. was living, and a resident of an adjoining county in the state of Virginia, and prays the court to require the plaintiff to produce this deed, thus traced into the hands of one of its officers, or to require said officer to account for it. Such new matter constitutes a claim for affirmative relief in this suit. Such deed is necessary as a muniment of title to defendant's right of way, and the production thereof prayed for is necessary in aid of defendant's defense to the original bill, and there is no other plain, adequate, and complete remedy for giving full and complete relief, and thus ending the litigation. If the plaintiff had failed or refused to file a special reply in writing to such answer by way of cross-bill, the statute required the allegations to be taken as true, and no proof thereof to be required. But plaintiff tendered to be filed such special reply

in writing, but the court refused to permit the same to be filed, and dissolved the injunction. Such refusal to permit the special reply to be filed was erroneous, and consequently it was error to dissolve the injunction.

CLEON MOORE and W. H. TRAVERS for appellant.

FORREST W. BROWN for appellee, cited Code, c. 125, ss. 35, 36, 57; 35 W. Va. 634; 23 W. Va. 314; 25 W. Va. 394; 11 W. Va. 386; 28 W. Va. 113; 26 W. Va. 225; 3 W. Va. 23; 20 W. Va. 415; 36 W. Va. 437; 1 H. & M. 110, 111; 1 Bart. Ch. Pr. 61; 10 Am. & Eng. Enc. Law, 884.

HOLT, PRESIDENT:

On appeal from a decree of the Circuit Court of Jefferson county, entered on the 12th day of March, 1895, refusing specific performance and dissolving injunction.

The plaintiff, the Norfolk & Western Railroad Company, alleged in its bill that the Shenandoah Valley Railway Company in the year 1878 purchased from defendants' ancestor, James B. McGarry, a strip of land sixty six feet wide and eleven thousand nine hundred and eighty eight feet long, giving its description and location, for the purpose of constructing a part of their railway track, for the sum of six hundred dollars, which the company paid, took possession, made their road by trestling a part of it with some bents high enough and wide enough to be used as a wagonway under grade crossing, one of which was so used by defendant James W. McGarry. Afterwards plaintiff, to make its track permanent and safe, made a fill where the trestle was, whereupon defendant, James W. McGarry, brought an action of trespass against the company, claiming the private right of way of such undergrade crossing, and asking ten thousand dollars for the damages inflicted by the filling up thereof; and the plaintiff, the Norfolk & Western Company, alleged that by purchase and conveyance it was the successor and owner of all the franchises, rights, and property of the Shenandoah Valley Railway Company. It therefore prayed that the suit at law might be enjoined, and that McGarry be compelled to execute the contract for the sale of the land by conveying the legal title. The injunc-

tion was granted to the suit at law. James W. McGarry appeared and answered, admitting that the sale had been made for the sum of six hundred dollars, reduced to that amount in consideration of the reserving by the grantor and the making by the grantee of said undergrade right of way across the track; that the six hundred dollars had been paid, and the crossing, under a certain bent of the trestle had been made, and that the ancestor, James B. McGarry, deceased, had executed and delivered to the Shenandoah Valley Railway Company a deed for the said strip of land, excepting from said conveyance, and expressly reserving therein, the right of way mentioned above forever. And the defendant alleged that James B. McGarry had specifically performed his contract of sale, and that neither he nor his heirs at law set up any claim to or in any way disputed the right of the railroad company to said tract of land now occupied by them, save only the right of way expressly reserved in the deed; and by way of cross bill defendant alleged that Col. W. L. Boyce, a resident of Clarke county, Virginia, was then, and still is, vice president of the Shenandoah Railway Company, and is also a director in the Norfolk & Western Railroad Company, and acting for the Shenandoah Valley Company, made the contract of purchase of the strip of land in question; that he was fully authorized to complete the transaction, and on behalf of his company, the Shenandoah Valley Railway Company, accepted said deed, and adds: "Inasmuch as the said W. L. Boyce received said deed for and on behalf of the said Shenandoah Valley Railway Company, and inasmuch as the said W. L. Boyce is an officer in and one of the company designated by the corporate name of the Norfolk & Western Railroad Company, the plaintiff in this suit, and therefore in antagonistic relations to respondent so far as this record is concerned, respondent asks this Court to require the plaintiff to produce this deed thus traced into the possession of one of its officers, or to require said officer to account for it"—with the added prayer that the injunction be dissolved, and the bill be dismissed. A general replication was entered and many depositions were taken. On the 28th day of November, 1894, the plaintiff tendered its

special replication to defendant's answer by way of cross-bill, and asked leave to file the same, but the court declined to permit the said special replication to be filed. And this is the first ground of error. (2) The burden of proof was on defendant James W. McGarry to show that there was such deed with such reservation therein of said right of way. (3) The court erred in considering the parol evidence, against the objection of plaintiff, to show the character of the contract of sale, instead of confining defendants to production of evidence of the existence of the deed and of its contents. And, lastly, the court erred in pronouncing the following final decree: "This cause coming on to be heard this 12th day of March, 1895, upon the papers formerly read therein and the depositions of Moses Barr, James W. Glenn, A. C. Drawbaugh, John A. Osborn, George W. Harris, H. Clay Gittings, and John Cameron, taken and filed and read in behalf of the defendant, and upon the depositions formerly read in behalf of the plaintiff, and the affidavit of J. N. Sadler filed by complainant, and upon the answer of the plaintiff to the rule against it filed on March 1, 1895, by order of the court, and upon a motion to dissolve the injunction, was argued by counsel; and upon consideration thereof it is adjudged, ordered, and decreed that the injunction heretofore granted in this cause be dissolved; and that the defendants do recover of the plaintiff, the Norfolk & Western Railroad Company, their costs in this injunction proceeding expended."

This decree, as far as it goes, seems to be right, because, there being only a general replication to the answer, and no special reply in writing to the allegation that defendant had executed a deed reserving the right of way, constituting a claim for the affirmative relief prayed for *viz.* the production of the deed, such allegation the statute imperatively required should be taken as true, and no proof thereof could be required. This showed that the contract mentioned in the bill had already been specifically performed, with such reservation, and therefore the bill was properly dismissed. But the error, if any, was in refusing to permit plaintiff to file such special reply tendered by him. Is it a case in which defendant could have filed a

cross-bill?    There are two important classes of cases in which the court gives relief to the defendant without a cross-bill—suits for an account, in which, if it finally appears that the balance is in favor of the defendant, the court will give him a decree for the sum found to be due him; and bills for specific performance of contracts, in which, if the parties differ as to the terms of the contract, and that question is decided in favor of the defendant, the court will compel the plaintiff to perform the contract thus established.    But these exceptions illustrate the rule, for they proceed distinctly upon the theory that the court only entertains such bills upon the condition that the plaintiff will consent to the same justice being rendered to the defendant that he asks for himself, and formerly this consent was required to be expressly given in the bill.    1 Fost. Fed. Prac. (2d Ed.) § 171; 1 Beach, Mod. Eq. Prac. § 429; Story, Eq. Pl. (10th Ed.) § 394.    This is a bill for specific performance.    Do the bill and answer fall within the exceptional case, or within the rule?    A cross-bill is a mere auxilliary suit, a dependency of the original.    It may be brought by the defendant against the plaintiff in the same suit, or against other defendants, or against both; but it must be touching the matters in question in the bill, as where a discovery is necessary, or as when the original bill is brought for a specific performance of a contract which the defendant at the time insists ought to be delivered up and canceled, or when the matter of defense arises after the cause is at issue.    *McMullan* v. *Eagan*, 21 W. Va. 233, 247; 1 Fost. Fed. Prac. (2d Ed.) 286; Story, Eq. Pl. § 389.    See *Ayres* v. *Carver*, 17 How. 591, 595.    Section 35 of chapter 125 of the Code gives the defendant the right to allege in his answer any new matter constituting a claim for affirmative relief in the same manner and with like effect as if the same had been alleged in a cross-bill; and in such case, if the plaintiff or defendant against whom such relief is claimed desire to controvert the relief prayed for in the answer, he shall file a special reply in writing denying such allegations of the answer as he does not admit to be true, and stating any facts constituting a defense.    See *Goff* v. *Price*, 42 W. Va. 384 (26 S. E. 287).    This part of this answer

was for discovery and production of the deed in aid of defendant's defense, and for its preservation as a muniment of title to the right of way. It alleged the existence of the deed, and that it was in the possession of a designated officer of the plaintiff corporation, and prayed that plaintiff might be compelled to produce it or account for it. See *Yates* v. *Stuart's Adm'r*, 39 W. Va. 124 (19 S. E. 423). And the question in dispute, affirmed on the one side and denied on the other, was, had such a deed, or any deed, been executed. The special reply in writing denied that John B. McGarry had executed and delivered to the Shenandoah Valley Railway Company, or to any one for it, a deed for the said land, and called for full proof of said allegation. This would have put upon the defendants the burden of taking the testimony of Col. Boyce if the fact could not have been otherwise proved, and of taking the proper steps to cause its production.

But there is still another objection to this practice equally serious. Plaintiff did not undertake to prove, by Col. Boyce or in any other way, a deed which never existed. If it had existed, it was in that event not its place to prove it. Defendant, being fearful that the deed did not contain the reservation he first supposed, declined to examine Col. Boyce, the only one who appears to know anything about it, and dropped that branch of his defense. The deed is not proved, and, not being proved, never did, and does not now, exist. The sale is a verbal one, but different from what the plaintiff claims. There was a condition or reservation of the right of way, with that important qualification, made out by testimony of what was said just about the time of the sale. Plaintiff's case is made out, for defendant admits that the purchase money was paid and the possession taken by plaintiff's vendor. The theory is that he has successfully met the case made in the bill by refusing to examine Col. Boyce, the one to whom he says it was delivered, and by refusing to let plaintiff answer that it has no such deed. But defendant does produce some evidence on the point. His witness John Cameron says: "I was present at an interview; and Col. W. L. Boyce, Capt. J. Glenn (the contractor who was putting up the trestling)

James B. McGarry, and myself were present. It was im-
mediately before the commencement of the work of build-
ing the trestle (about the time the deed is said to have
been made). I afterwards saw a deed from McGarry, and
it was brought to our office by Col. Boyce, and spoken of
by him as though he had just received it. I had the deed
in my hand, but did not read it. It was then left in our
office, and the office had a fire, and many papers were
burned up in it. And I was afterwards told by Col. Boyce
that this deed was among the papers burned up." Is it
right to decree for the defendant on the theory that there
is no such deed, when he stops short in his testimony
at that point, and refuses to examine Col. Boyce? What
becomes of the legal, as well as the natural, presumption,
as against defendant, that the deed burned was the deed in
question, but that it contained no such reservation? If
such deed could have been proved, and its contents, then
plaintiff, by proper amendment of its bill, by paying the
costs, *etc.*, could have obtained the execution of a new deed,
in substitution of the one destroyed, as a memorial and
muniment of its title to this important strip of land. De-
fendant saw fit to put a formal cross-bill in his answer, ex-
pressly praying relief therein. He permitted it to remain,
and still refused to permit plaintiff to file a special written
reply thereto; and yet, when it comes to a final hearing,
takes a decree that has no justification except the applica-
tion of the imperative statute that, on the pleadings thus
put into that condition, no proof of the existence and con-
tents of the deed, with its reservation, should be required,
but the same shall be taken as true, as alleged in the cross-
bill, notwithstanding the general replication, which was
not at all inconsistent with the special reply, and, of course,
could not have the same effect.

Our conclusion is that such new matter constituted a
claim for affirmative relief in this suit (1) because the pro-
duction of the deed is relief necessary in aid of defendant's
defense to the original bill; (2) it is his only muniment of
title to his private right of way; (3) there was no other
plain and adequate remedy for doing complete justice and
settling all these matters of litigation raised by the plead-
ings between the parties.

If the plaintiff had failed or refused to file a special reply in writing to such part of the answer thus made a cross-bill, the statute imperatively required the allegations to be taken as true, and that no proof thereof should be required. But plaintiff tendered and offered to file such special reply, but the court refused to permit it to be filed. Such refusal was error.

As to any right of way acquired by long and continuous use, it would not be adverse to their vendee, if defendants were still the legal owners, holding the legal title in trust for the equitable owners; and, if it has been conveyed as claimed, it would require a strong set of circumstances to change them from mere licensees to absolute owners of particular places along a railroad track, or across it under trestling, where they were in the habit of going. If such a doctrine should prevail, railroad companies would soon have their tracks broken up into fragments practically disconnected.

Decree complained of reversed, and cause remanded.