## BOWKER *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
DISTRICT OF NEW JERSEY.

No. 247. Argued April 30, May 1, 1902.—Decided May 19, 1902.

Cases in which the jurisdiction of the District or Circuit Courts of the United States is in issue, can only be brought directly to this court after final judgment on the whole case.

When a libel and cross-libel are filed in admiralty, they should be heard together, and if the cross-libel is dismissed for want of jurisdiction before the whole case is heard and determined, this court cannot take jurisdiction of the order of dismissal under section five of the judiciary act of March 3, 1891.

THE case is stated by the District Court, in substance, as follows: On November 3, 1899, a libel was filed on behalf of the United States in the District Court of the United States for the District of New Jersey against the schooner William H. Davenport, her tackle, apparel and furniture, and against all persons intervening therein, in case of collision, civil and maritime, seeking to recover the sum of $5000 damages alleged to have been sustained by the light-house tender Azalea in a

collision with that schooner on October 2, 1899, off Cornfield Point light-ship in Long Island Sound. It was averred in the libel that the collision was in no way caused by the fault or negligence of those on board the light-house tender Azalea, but that it was solely due to the carelessness and negligence of those in charge of the schooner William H. Davenport in certain particulars stated. The libel concluded with the formal prayer that process might issue in due form of law against the schooner, her tackle, apparel and furniture; that all persons interested might be cited to appear and answer; and that the schooner might be condemned and sold to pay libellant's claim with interest and costs; "and that the court will otherwise right and justice administer in the premises." Process in due form was issued against the schooner, and on November 8, 1899, the marshal filed his return certifying that on November 4 he had made due attachment of the schooner and that the vessel was then in his custody. November 22, 1899, F. S. Bowker, managing owner, filed a claim to the schooner on behalf of her owners, a stipulation for costs and a stipulation for value, and thereupon the schooner was released from custody and restored to the possession of her owners. The claimant, Bowker, filed his answer to the libel December 11, 1899, denying that the collision was caused or contributed to by those in charge of the schooner, alleging that the collision and the damage resulting therefrom were caused wholly by the fault of the steamer Azalea and of those in charge of her, in certain particulars stated, and concluded with the prayer that the libel be dismissed with costs. December 29, 1899, Bowker, for and on behalf of himself and his coöwners, filed a cross-libel against the United States seeking to recover the sum of $6000 damages alleged to have been sustained by the schooner and by her cargo in said collision. It was alleged in the cross-libel that the collision was wholly due to the negligence and fault of the steamer Azalea and of those in charge of her, the particulars being set forth, and the prayer of the cross-libel asked "that a citation, according to the course and practice of this honorable court in causes of admiralty and maritime jurisdiction, may issue to the said respondents above named, citing and admonishing them to

appear and answer all and singular the matters aforesaid, and that this honorable court shall pronounce for the damages, with interest and costs, and will grant a stay of all further proceedings in the action of the said respondent brought by it in this honorable court against the schooner William H. Davenport by the filing of a libel against said schooner, on November 3, 1899, until security be given by said respondent, pursuant to the admiralty rules of the Supreme Court of the United States and the practice of this honorable court, to respond for the damages claimed in this cross-libel, and that this honorable court will give to the cross-libellants such other and further relief as in law and justice he may be entitled to receive, this said action being a counterclaim arising from the same cause of action for which the original libel was filed against the said William H. Davenport."

Citation was issued and served on the United States attorney for the district, who was the proctor of record for the libellant in the original suit. The United States attorney filed a notice of motion to quash the citation, February 14, 1900, and a motion to that effect was argued by counsel. December 17, 1900, the District Court filed its written decision, holding that the cross-libel could not be maintained because the court had no jurisdiction to entertain the cause or to enter a decree as prayed for against the United States, whereupon and on that day the court entered a decree that the citation be quashed and that the cross-libel be dismissed with costs. 105 Fed. Rep. 398. The cross-libellant thereupon appealed to this court and the appeal was allowed on the question of jurisdiction. The District Court made a statement of the facts, to which a copy of the record was attached, and certified five questions in respect of jurisdiction under the cross-libel to this court for decision.

*Mr. G. Philip Wardner* and *Mr. Eugene P. Carver* for appellant.

*Mr. Assistant Attorney General Beck,* for appellee.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court:

This appeal is prosecuted under the fifth section of the judiciary act of March 3, 1891, providing "that appeals or writs of error may be taken from the District Courts or from the existing Circuit Courts direct to the Supreme Court in the following cases: (1) In any case in which the jurisdiction of the court is in issue. In such cases the question of jurisdiction alone shall be certified to the Supreme Court from the court below for decision."

. By the sixth section the Circuit Court of Appeals, in cases within its appellate jurisdiction, may certify to the Supreme Court "any questions or propositions of law concerning which it desires the instruction of that court for its proper decision," and our thirty-seventh rule requires in such cases that "the certificate shall contain a proper statement of the facts on which such question or proposition of law arises."

The District Court has observed that rule in form, but it is under the fifth section that our jurisdiction is invoked, and, as the record accompanies the statement, we are enabled to dispose of the appeal.

It was settled, soon after the passage of the act of 1891, that cases in which the jurisdiction of the District or Circuit Courts was in issue could be brought to this court only after final judgment. *McLish* v. *Roff*, 141 U. S. 661; *Railway Company* v. *Roberts*, 141 U. S. 690. The subject was carefully considered in the opinion of Mr. Justice Lamar in the first of these cases, and the conclusion reached was in accordance with the general rule that a case cannot be brought to this court in parcels. *Railway Company* v. *Postal Telegraph Company*, 179 U. S. 641.

The preliminary question is, therefore, whether the decree dismissing this cross-libel is a final judgment within the rule upon that subject. It was long ago held that a decree dismissing a cross-bill in equity could not be considered, standing alone, as a final decree in the suit, and was not the subject of an independent appeal to this court under the judiciary act of 1789; and that it could only be reviewed on an appeal from a final decree disposing of the whole case. *Ayres* v. *Carver*, 17 How. 591; *Ex parte Railroad Company*, 95 U. S. 221.

It is argued that *Ayres* v. *Carver* is distinguishable from the case at bar because the twenty-second section of the judiciary act of 1789, under which the appeal in that case was taken, provided in terms for the revision of final decrees, whereas no specific mention is made of final decrees or judgments in section five of the judiciary act of 1891. But that difference was specifically disposed of in *McLish* v. *Roff*, as not affecting the principle that the decree must be final in order to be appealable.

Counsel quote the language of Mr. Chief Justice Waite in *Railroad Company* v. *Express Company*, 108 U. S. 28, that "a decree is final, for the purposes of an appeal to this court, when it terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined;" and insist that the decree on the cross-libel has definitely determined the right of respondent to affirmative relief. But the litigation between the parties on the merits embraced the right of libellant to recover because of the fault of respondent, as well as the right of respondent to recover because of the fault of libellant, and until the question as to which of the parties was at fault, or whether both were, is determined, that litigation cannot be said to have terminated. If the District Court had held that it had jurisdiction to award affirmative relief against the United States on the cross-libel, the cause would have stood for hearing on the whole case. Its decision that it did not have jurisdiction simply prevented respondent from obtaining affirmative relief over, assuming that the facts justified it. And however convenient it might be that the question of jurisdiction of the cross-libel should be adjudicated in advance, it is nevertheless true that when a decree was rendered on the original libel, the error, if any, committed in dismissing the cross-libel, could be rectified. That this course might result in delay, and perhaps sometimes in hardship, if it should turn out that jurisdiction could be exercised on the cross-libel, is not a sufficient reason for entertaining an appeal, if the decree did not so dispose of the case as to enable this court to take jurisdiction.

Generally speaking, the same principles apply to cross-libels

as to cross-bills, and this case affords no ground of exception therefrom.

In admiralty, if the respondent desires to obtain entire damages against the libellant, or damages in excess of those claimed by libellant, a cross-libel is necessary, although matters of recoupment or counterclaim might be asserted in the answer. *The Sapphire,* 18 Wall. 51 ; *The Dove,* 91 U. S. 381.

In *The Dove* a final decree was entered in favor of the libellants in the original suit, and a decree rendered at the same time dismissing the cross-libel. No appeal was taken from the decree of dismissal, but the case was carried to the Circuit Court from the District Court by appeal from the decree on the libel, which was affirmed, and the cause brought to this court.

The principal question involved on the appeal to this court was whether the submission to the dismissal of the cross-libel in the District Court by the parties who had filed it, prevented them from making the same defence to the original libel that they might have made if no cross-libel had been filed, and it was held that while the parties were bound by the decree of the District Court dismissing the cross-libel, the issues of law and fact involved in the original suit were not thereby disposed of.

In the course of some general observations, Mr. Justice Clifford, delivering the opinion, after remarking that causes of that kind might be heard separately, said: "Usually such suits are heard together, and are disposed of by one decree or by separate decrees entered at the same time; but a decision in the cross-suit adverse to the libellant, even if the decree is entered before the original suit is heard, will not impair the right of the respondent in the original suit to avail himself of every legal and just defence to the charge there made which is regularly set up in the answer, for the plain reason that the adverse decree in the cross-suit does not dispose of the answer in the original suit. . . . Whether the controversy pending is a suit in equity or in admiralty, a cross-bill or libel is a bill or libel brought by a defendant in the suit against the plaintiff in the same suit, or against other defendants in the original suit or against both, touching the matters in question in the original

bill or libel. It is brought in the admiralty to obtain full and complete relief to all parties as to the matters charged in the original libel; and in equity the cross-bill is sometimes used to obtain a discovery of facts. New and distinct matters, not included in the original bill or libel, should not be embraced in the cross-suit as they cannot be properly examined in such a suit, for the reason that they constitute the proper subject-matter of a new original bill or libel. Matters auxiliary to the cause of action set forth in the original libel or bill may be included in the cross-suit, and no others, as the cross-suit is, in general, incidental to, and dependent upon, the original suit. *Ayres* v. *Carver*, 17 How. 595; *Field* v. *Schieffelin*, 7 Johns. Ch. 252; *Shields* v. *Barrow*, 17 How. 145."

In this case the cross-libel was, as stated therein, " a cross-libel brought under admiralty rule 53 of the Supreme Court of the United States, being a counterclaim arising out of the same cause of action as the suit brought by the United States against the said schooner William H. Davenport in a cause of collision, by a libel filed November 3, 1899, in said court." The 53d admiralty rule provides that the respondents in a cross-libel shall give security to respond in damages, unless otherwise directed, and that all proceedings on the original libel shall be stayed until such security shall be given.

The cross-libel and the answer to the libel were consistent, the subject-matter of the libel and the cross-libel was the same, and the latter, in no proper sense, introduced new and distinct matters. The cross-libel occupied the same position as a cross-bill in equity, and the general rule is that the original bill and the cross-bill should be heard together and disposed of by one decree, although, where the cross-bill asks affirmative relief, and is therefore not a pure cross-bill, the dismissal of the original bill may not dispose of the cross-bill, which may be retained for a complete determination of the cause. *Holgate* v. *Eaton*, 116 U. S. 33, illustrates this. There the bill and cross-bill were heard together, and it was held that the original bill must be dismissed, but that relief might be accorded on the cross-bill. The cross-bill was not filed merely as a means of defence, but of obtaining affirmative relief, and the defeat of the bill sus-

tained the disposition of the cause on the cross-bill. Such might be the result here if it turned out on the hearing that the Azalea was in fault and not the schooner, provided jurisdiction could be maintained to award relief against the United States. But in any point of view, the decree on the cross-libel did not so finally dispose of the whole case as to entitle us to take jurisdiction under section 5 of the act of 1891.

*Appeal dismissed.*

MR. JUSTICE WHITE and MR. JUSTICE MCKENNA dissented.