## SUSQUEHANNA S. S. CO. v. A. O. ANDERSON & CO., Inc.

(District Court, S. D. New York. June 30, 1921.)

### No 805.

Injunction ⊚⇒26(3)—Equity will not restrain prosecution of action solely because of existence of cross-claims which cannot be pleaded therein.

Equity will not intervene to restrain prosecution of suit at law or in admiralty merely because of the existence of cross-claims which cannot be pleaded in such suit, nor unless there are other circumstances, such as insolvency of the plaintiff, which may invoke its jurisdiction.

In Equity. Suit by the Susquehanna Steamship Company against A. O. Anderson & Co., Inc. On motion to dismiss bill. Granted.

Cass & Apfel, of New York City, for plaintiff.

Duncan & Mount, of New York City (John A. McManus, of New York City, of counsel), for defendant.

LEARNED HAND, District Judge. Equitable jurisdiction over set-offs antedates any statute of set-off, and remains after their enactment. Sowles v. First Nat. Bank (C. C.) 100 Fed. 552. I shall assume without deciding that in a case where this court would entertain an ancillary bill to restrain or control an action at law here pending, it may do the same to restrain or control a libel in the admiralty. In so doing, I shall also assume that the counterclaims here in question are maritime, or, if not, that they may still be the subject of a bill for an equitable set-off or counterclaim. I need hardly add that both these assumptions are extremely doubtful; as to the second, see United, etc., Co. v. New York, etc., Line, 185 Fed. 386, 107 C. C. A. 442. I shall, therefore, for argument's sake strip the case of any peculiarities due to its arising out of a libel in the admiralty, and therefore in the federal courts.

The plaintiff seems to assume, because it has counterclaims which under the existing procedure in the main suit cannot be pleaded by cross-libel or otherwise, that a court of equity will restrain or control that suit in the interests of a supposed equity always inherent in that situation. Nothing is further from the truth. Equity, while looking with favor upon the interposition of cross-claims, never ventured to adopt the rule of the civil law, and always required some other circumstances than the mere existence of cross-claims before it would undertake to apply the doctrine of equitable set-off. Dade v. Irwin, 2 How. 383, 390, 391, 11 L. Ed. 308; Norwood Paper Co. v. Columbia Paper Bag Co., 185 Fed. 454, 456, 457 (C. C. A. 4th) 107 C. C. A. 524; Greene v. Darling, Fed. Cas. No. 5,765; Howe v. Sheppard, Fed. Cas. No. 6,773; Gordon v. Lewis, Fed. Cas. No. 5,614.

Among the circumstances held sufficient were nonresidence or insolvency of the plaintiff in the action at law North Chicago Rolling Mill v. Ore & Steel Co., 152 U. S. 596, 616, 14 Sup. Ct. 710, 38 L. Ed. 565; Brown v. Pegram (C. C.) 149 Fed. 515, 521, or that the claims

were incurred upon a mutual credit, Greene v. Darling, supra. Perhaps there may be other grounds, though I do not at present think of any. It is enough to dispose of the case at bar that there must be some such, and the bill, failing any such, must be dismissed for want of equity.

The libelant is a New York corporation and therefore not a nonresident; the sixteenth article of the bill does not allege that it is insolvent, but only that it is "of small financial responsibility," which is irrelevant. Nor is there any other ground suggested, except that the plaintiff acted as agent of the Lydia Steamship Company after November 28, 1919, when Exhibit C was executed.

The agreement is inartificial and hard to construe, but I think it doubtful whether it creates an agency. It is specifically provided that "the terms of the charter party except as modified by this letter, are to control between us," and that the defendant shall pay about $60,000 monthly in advance. The only possible color for supposing that an agency was intended rests in the provision that the defendant shall "give an accounting of all moneys received and expended." It seems to me unlikely that in view of the payment of the hire it could have been the purpose of the parties that the defendant should pay the balance of the earnings, if there were any. An accounting did not necessarily imply a payment of the balance due, and may have been meant only to put the Lydia Steamship Company in possession of all the facts when the "amicable" settlement should be reached. If the liability of the defendant was limited to the hire, there is no ground for equitable set-off, though the claim be liquidated.

On the other hand, if the agreement is to be treated as an agency, and if it bound the defendant not only to pay the hire, but any possible earnings as well, still I think the bill must fail. The agency, even though there was one, is alleged in article 17 to have been terminated by the Lydia Steamship Company and the parties hereto. Whether this was after or before the assignment, it left nothing but the obligation to account, necessarily unliquidated. That obligation was not to keep separate the money received from the operation of the ship and to turn it over. There is no warrant in the agreement for such an obligation, and no allegation in the bill could be controlling when the contract is incorporated into it. It was no more than to render an account and to pay the balance shown or found due. But such an obligation is no different from any other unliquidated demand, and presents no reason for equitable set-off. There is exactly as little and as much reason why it should be tried at the same time as the libel, as though it had arisen from any other claim which the plaintiff might have.

Nor, indeed, does it appear to me that even though any sum recovered under the libel was to be kept separate with the other funds earned by the ship and turned over to the Lydia Steamship Company that this would present a case for equitable set-off, after assignment to the plaintiff. There is, of course, always an advantage in setting off cross-claims, an advantage which possibly ought to overbalance the confusion or clumsiness of trying two independent suits together.

Yet for good or ill our law has not so looked at it, and the equity which will avail a defendant sued in the first cause must go further. It must either consist of some peril that he cannot recover at all, as for example in case of insolvency, or of some impediment, such as nonresidence or the like, which will force him to a disadvantage in the prosecution of his claim. Otherwise, he must be content to await the ordinary course of law.

There is finally the allegation in article 16 that —

"Had the defendant obtained possession of said sums of money and refused to make payment thereof, the Lydia Steamship Company would have been unable to have collected from it."

This allegation presupposes that the defendant, if successful, would have transmitted the proceeds to its Danish parent, and must rest upon that assumption. The allegation is not the equivalent of saying that the defendant will so transmit the funds, or will not have with its other resources sufficient financial ability to meet any judgment which may be found due. Should such an allegation be made, the question might arise whether the supposed cross-claim was maritime, and whether, if not, it could be interposed by bill in equity, though it could not be if it were pleaded in a cross-libel.

Bill dismissed, with leave to plead over within 20 days.