## MONONGAHELA & OHIO DREDGING CO. v. RODGERS SAND CO.

(District Court, W. D. Pennsylvania. May 24, 1923.)

1. **Shipping** ⬳39—**Employment of dredge and scows held under verbal charter.**
   Employment of libelant's dredge and attendant scows by respondent *held* not under the written charter party, under which they were used at another place, but under a subsequent verbal charter, by which they were to be moved and used at the new location.

2. **Admiralty** ⬳36—**Set-off not allowed in admiralty courts.**
   A set-off is unknown to the maritime law, except as a credit on the transaction which forms the subject of the libel.

In Admiralty. Suit by the Monongahela & Ohio Dredging Company against the Rodgers Sand Company. Decree for libelant.

Decree affirmed 296 Fed. 919.

McIlvain, Murphy & Mohn, of Pittsburgh, Pa., for libelant.

Lowrie C. Barton and Charles S. Crawford, both of Pittsburgh, Pa., for respondent.

SCHOONMAKER, District Judge. The libelant, the Monongahela & Ohio Dredging Company, has filed a libel in personam in this case against the Rodgers Sand Company, to recover a balance of $4,160, with interest from September 2, 1920, alleged to be due to libelant from the respondent under a verbal agreement, whereby the dredgeboat Northern and accompanying scows were chartered by the respondent from the libelant, at the rate of $130 per day, for certain work at Six Mile, in the Allegheny river. The dredgeboat was in use under this contract at Six Mile, in the Allegheny river, for the period of 68 days, beginning June 25, 1920. There is no controversy in this

case over the number of days this dredge was in use at Six Mile, on the Allegheny river, or in the rate per day for such use.

The respondent is defending on the ground, first, that the libelant was under agreement to furnish for the work at Six Mile in the Allegheny river, four scows, when as a matter of fact they only furnished three, and further interposes, by way of set-off or counterclaim, a shortage of scows agreed to be furnished by the libelant to the respondent under a prior contract between the parties, for the charter of said dredge for certain work in the Monongahela river at Wilson, Pa., certain expenses for the towing of said scows, repairs to the same, and incidental expenses of said work under said charter at Wilson, Pa.

It appears that at the time the verbal charter was made between the libelant and the respondent for the use of libelant's dredgeboat Northern and scows at Six Mile, in the Allegheny river, the libelant was then engaged in certain work for the respondent at Wilson, in the Monongahela river, some 25 miles away from the point of work on which the libelant bases its claim to recover here.

[1] The work at Wilson, in the Monongahela river, was under a written charter party made up by a proposal from the libelant to the respondent, dated May 11, 1920, and accepted by the respondent by letter of the same date, wherein it was agreed that the libelant would furnish to respondent the dredgeboat Northern and four scows at the rate of $130 per 10-hour day; time to begin when dredgeboat Northern leaves Rochester, Pa., and straight time until dredge is returned to Pittsburgh wharf, except in case of breakdowns exceeding one hour, which are to be deducted. Respondent was also to furnish coal on the scows at the point of the proposed dredging.

On June 24, 1920, respondent desiring to stop the work of dredging at Wilson, and then do certain dredging at Six Mile, in the Allegheny river, through its manager, J. H. Rodgers, called Mr. Kussart, vice president of libelant, on the telephone and arranged with him that the dredge Northern was to be moved to Six Mile, in the Allegheny river, for dredge work, with the understanding that the price was to be $130 per day, but that that was to be for 8 hours' time per day, instead of 10, as at Wilson, and that only two scows were to be furnished at Six Mile, instead of four, as had been agreed upon at Wilson. As a matter of fact, three scows were actually taken by the libelant to Six Mile, on the Allegheny river, instead of two.

The respondent contends, however, that there was but one contract, and that was the written contract under which the work was done at Wilson, on the Monongahela river, and seeks to interpose as a defense the shortage in scows on the work at Wilson, certain expenses at Wilson in connection with towing the scows, repairs to the same, and incidental expenses in connection with said work at Wilson, and also a shortage of scows for work at Six Mile, on the Allegheny river.

We cannot sustain the respondent's claim in this particular. We find from the evidence in this case that the work at Six Mile, on the Allegheny river, for which the libelant is seeking to recover in this case, was performed under a separate contract entered into on the 24th day of June, 1920, when it was verbally agreed between the offi-

cers of the libelant and the respondent that the dredge Northern should be moved from Wilson, on the Monongahela river, to Six Mile, on the Allegheny river, for the performance of certain governmental work at Six Mile. The respondent has paid the libelant in full for the use of the dredge Northern and the scows at Wilson, Pa., making that payment on August 27, 1920, when the respondent paid to the libelant the sum of $7,670, paying the bills submitted by the libelant to the respondent for work done up until July 31, 1920.

[2] Inasmuch as we have found that the contract for work at Six Mile, on the Allegheny river, was a separate contract, we can give no consideration whatever to the defense or counterclaim set up by the respondent, growing out of the performance of the contract between the parties at Wilson, Pa.; for, if the respondent has a just claim in the particular set out in its answer, that must be made the basis of a separate action against the libelant. A set-off is unknown to maritime law, except as a credit on the transaction which forms the subject of the libel, and that necessarily excludes from this case a defense set up by the respondent growing out of the work at Wilson.

There is abundant authority for so doing. We will not do more than mention one or two. In Howard v. Bags of Malt (D. C.) 255 Fed. 917, the court said, at page 918:

"At this point it must be observed that the claimant makes a demand that a certain set-off should be allowed because of breach of contract on the part of the libelant. It is not necessary to go into the question whether the testimony shows such breach. It is enough to say that, under the law, these damages cannot be recovered by set-off, but must be recovered by a separate action. A set-off is unknown to the admiralty law, except as a credit on the transaction which forms the subject of the libel."

To the same effect is Emery v. Tweedie Trading Co. (D. C.) 143 Fed. 144, where it was held that new and distinct matters, not included in the original libel, but arising out of separate transactions, cannot be made the subject-matter of a cross-libel in admiralty, which must be confined to matters arising out of the same maritime transactions for which the original action was brought.

The action in the case at bar was brought for the use of the scow Northern at Six Mile, in the Allegheny river. Under this ruling, matters arising out of the performance of work at Wilson, on the Monongahela river, could not be included. The defense of the shortage of scows on the work at Six Mile, in the Allegheny river, would, as a matter of law, be a proper defense; but, from the evidence in the case, we find that the libelant was under no obligation to take four scows to the Allegheny river, that the verbal contract between the parties merely provided for two scows, and that the libelant performed the contract in full in this respect. This, therefore, disposes of that phase of the respondent's defense in this case.

The libelant asks us to find that, even if the contract were a single contract for the use of this dredgeboat at both places, nevertheless, this defense could not be set out, for the reason that the respondent has paid the libelant in full for all work done at Wilson, voluntarily, under a claim of right, and, under the law, voluntary payment could not now be recovered back, and therefore would not be a proper sub-

ject-matter of defense. Under the finding which we have made with reference to there being two separate contracts, it is not necessary to pass on this phase of the case, and we make no finding thereon.

We find that, under all the evidence in this case, the libelant is entitled to recover from the respondent the sum of $4,160, with interest from September 2, 1920, with costs, and that a decree may be entered for judgment in that amount in favor of libelant and against the respondent, with costs.